UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| JIM BOGGS and LINDA BOGGS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil No. 11-57-ART |
| v. | ) | |
| | ) | |
| 3M COMPANY and AMERICAN | ) | |
| OPTICAL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| 3M COMPANY, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | **& ORDER** |
| | ) | |
| ELKHORN & JELLICO COAL | ) | |
| COMPANY, LLC, et al., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

*** *** *** ***

Jim and Linda Boggs sued 3M and American Optical believing that their defective respirators caused Jim Boggs's black lung disease. 3M and American Optical moved for summary judgment arguing that the statute of limitations barred their claims. In response, the Boggses moved to amend their complaint to specify that his injuries also include lung cancer. Both his claims for black lung disease and for lung cancer, however, are outside of Kentucky's one-year statute of limitations. Consequently, 3M's and American Optical's motions for summary judgment are granted, and the Boggses' motion to amend their

complaint is denied.

## BACKGROUND

From 1972 until April 1986, Jim Boggs worked as an underground coal miner.  R. 65-2 at 2–3 (Dep. at 73–77), 8–9 (Dep. at 154, 157).  He started at Elkhorn & Jellico, working in the Track Side Mine.  *Id.* at 2 (Dep. at 73).  To protect against the inhalation of coal dust, Elkhorn & Jellico provided Jim Boggs and his fellow coal miners with respirators.  *Id.* at 5 (Dep. at 86–87).  Each day before working inside the mine, the coal miners collected their respirators—the 3M 8710—from a box labeled "3M" on the back of a pickup truck.  *Id.* (Dep. at 87).  And they did not do so blindly: Jim Boggs and his colleagues read the instructions on the side of the 3M box, which explained that the respirators were designed to protect against coal-dust exposure.  *Id.* at 5 (Dep. at 88), 6 (Dep. at 111); R. 68-2 at 8.  Boggs and his fellow miners also discussed the importance of wearing these respirators because coal-dust exposure could cause black lung and other diseases.  R.65-2 at 5–6 (Dep. at 88, 111); R. 65-6 at 1 (Dep. at 125).

For the first six years of his career, Boggs used the 3M 8710 respirator at Elkhorn & Jellico as well as several other coal companies.  R. 68-2 at 5 (Dep. at 7).  From 1979 to 1986, Boggs worked at the Blue Diamond Coal Company, where he started wearing a respirator by a different company, American Optical.[1]  *Id.* at 5–6 (Dep. at 7–8); R. 80-1 at 2–3 (Dep. at 8–9).  Unfortunately, a lower-back injury forced him to leave the coal mining industry in April 1986 and eventually led to his occupational disability.  R. 65-2 at 10 (Dep. at 192).

Boggs received even worse news five years later while under Dr. Breeding's care for

---

[1]   The parties dispute whether this respirator is the American Optical R2090 or R2090N, but the correct identification of this respirator is ultimately irrelevant to the rulings in this opinion.

his back.  R. 65-6 at 2 (Dep. at 128).  Probably because of Boggs's breathing difficulties, Dr. Breeding's clinic advised him to file a claim for federal black lung benefits.  *Id.* (Dep. at 127–28).  He took that advice to heart on July 10, 1991, when he submitted a Black Lung Benefits Act claim.  R. 65-3.  On September 10, 1991, the Department of Labor referred Boggs to Dr. Sundarum, a pulmonologist, for a black lung examination.  R. 65-4 at 1.  After conducting a chest x-ray, Dr. Sundarum diagnosed Boggs with "Coal Worker's pneumoconiosis" (black lung disease) caused by "prolonged exposure to coal dust for well over 15 to 16 years."  *Id.* at 1–2.  Ten days later, Boggs visited Dr. Breeding's office and asked him about Dr. Sundarum's diagnosis.  R. 65-5.  According to Boggs's medical record, he was informed that "Dr. Sundarum diagnosed black lung" and that Boggs should consult Dr. Breeding about his earlier chest x-ray.  *Id.*

Fast-forward about two decades.  On April 15, 2011, Jim Boggs and his wife, Linda, sued 3M and American Optical in federal court.  R. 1.  He asserted product liability, breach of warranty, and negligence claims against 3M and American Optical, alleging that their defective respirators caused him to contract black lung disease.  R. 1 at 6, 8, 11, 13, 14, 16.  Based on his black lung disease, his wife also asserted loss-of-consortium claims against both defendants.  *Id.* at 18.  After 3M and American Optical moved for summary judgment on the black lung and loss-of-consortium claims, R. 65; R. 68, the Boggses moved to amend their complaint to add Jim Boggs's lung cancer as an additional injury.  R. 81.

## DISCUSSION

## I.    3M's and American Optical's Motions for Summary Judgment

The crux of 3M's and American Optical's motions for summary judgment is that Jim Boggs brought his black lung claims after the one-year statute of limitations expired.  Boggs

3

tries to overcome the statute of limitations with two arguments: (1) that the "discovery rule" tolled the statute of limitations, and (2) that equitable estoppel prevents 3M from relying on a statute-of-limitations defense because 3M actively concealed its respirator's defects. Neither of these arguments has merit. Consequently, Boggs's black lung claims are untimely.

### A. Discovery Rule

The discovery rule does not save Jim Boggs's claims for black lung disease. Because the Court is sitting in diversity, *see* R. 1 at 3 ¶ 8, Kentucky state law is the remote control, determining which events start, pause, and stop the one-year statute of limitations, *see Duffy v. Ford Motor Co.*, 218 F.3d 623, 629 n.3 (6th Cir. 2000). Under Kentucky law, a plaintiff must "commence" a personal injury action within one year after the cause of action "accrued." Ky. Rev. Stat. § 413.140(1)(a). Normally, this one-year clock begins running when the plaintiff is injured. *Michals v. Baxter Healthcare Corp.*, 289 F.3d 402, 406 (6th Cir. 2002) (citing *Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky. 1972)).

But starting the statute-of-limitations clock on the date of injury can be unnecessarily harsh when the injury is one that "is not readily discoverable," such as in cases involving "latent illness or injury resulting from exposure to harmful substances." *Vandertoll v. Commonwealth*, 110 S.W.3d 789, 796–97 (Ky. 2003) (citing *Roman Catholic Diocese of Covington v. Secter*, 966 S.W.286, 288 (Ky. Ct. App. 1998)). To mitigate this harshness, Kentucky's "discovery rule" prevents the one-year clock from starting until the plaintiff "discovers, or in the exercise of reasonable diligence should have discovered" that (1) he was injured and (2) "his injury may have been caused by the defendant's conduct." *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000) (quoting *Hazel v. Gen. Motors Corp.*, 863 F. Supp. 435, 438 (W.D. Ky. 1994)).

4

In this case, the discovery rule does not save Boggs's black lung claims.  Boggs brought these claims on April 15, 2011.  R. 1.  Thus, in order to be timely, his claims must not have accrued any earlier than April 15, 2010.

The statute of limitations, however, began to run at the latest on September 20, 1991, when he knew of his diagnosis and had sufficient facts to connect his disease to 3M's and American Optical's respirators.  The following facts irrefutably demonstrate that Boggs knew about his disease:  (1) on July 10, 1991, he filed a claim for black lung benefits under the penalty of perjury, R. 65-3 at 1; (2) on September 10, 1991,  Dr. Sundarum diagnosed Boggs with black lung disease, and said it was caused by his "prolonged exposure to coal dust for well over 15 to 16 years," R. 65-4 at 1–2; and (3) on September 20, 1991, Boggs visited Dr. Breeding's office and specifically asked about Dr. Sundarum's diagnosis, R. 65-5. Consequently, Jim Boggs knew of his black lung disease by September 20, 1991, nearly 10 years before he filed this lawsuit.

In addition to knowing that he was injured, Boggs also had sufficient "critical facts" in 1991 to put him on notice of the connection between the respirators and his black lung disease.  *Vitalo v. Cabot Corp.*, 399 F.3d 536, 542 (3d Cir. 2005) (quoting *Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir. 1985)) (explaining a similar discovery rule under Pennsylvania law); *see also United States v. Kubrick*, 444 U.S. 111, 122, 126 (1979) (Stevens, J., dissenting) (explaining a similar discovery rule under the Federal Employers' Liability Act).  In 1991, Boggs knew that:

- He wore the respirators to protect him from inhaling coal dust.  R. 65-2 at 5–6 (Dep. at 88, 111); R. 65-6 at 2 (Dep. at 125).

- Black lung disease and other pulmonary illnesses could be caused by inhaling coal dust.  R. 65-6 (Dep. at 125–26); *compare id.* (Dep. at 126) (testifying that his

father had been diagnosed with black lung disease due to coal mining employment), *with Townley v. Norfolk & W. Ry. Co.*, 887 F.2d 498, 501 (4th Cir. 1989) (applying the discovery rule under the Federal Employers' Liability Act and holding that the plaintiff possessed enough information to start the running of the statute of limitation in part because the plaintiff and his wife had several relatives who had died of black lung disease).

- He had been diagnosed with black lung disease due to his work in coal mines. R. 65-4 at 1–2; *see also* R. 65-3 (indicating that he filed a federal claim under penalty of perjury for black lung benefits from his former employers in the coal-mining industry).

Once Dr. Sundarum diagnosed Boggs with black lung disease, the natural conclusion is that the respirators may not have worked as intended. Even Boggs recognizes the force of this logic. *See* R. 86-1 at 3 (Dep. at 125) (agreeing that if he were told that he had black lung disease in 1991, then he would have concluded that defective respirators were a possible cause).

Other courts have held that the statute-of-limitations clock starts when plaintiffs have even fewer facts tying their disease to its cause. For example, in *Townley v. Norfolk & Western Railway Company*, 887 F.2d at 499, the plaintiff developed severe respiratory problems while working for a railroad from 1948 to 1979. During that time, he worked around heavy amounts of coal dust and frequently coughed up coal dust. *Id.* Naturally, the railroad worker visited his doctor, who diagnosed him with diabetes, heart disease, and hypertension but not with black lung disease because the doctor lacked the expertise and equipment to accurately do so. *Id.* By happenstance, however, he saw a newspaper advertisement in 1980 that encouraged railroad workers to apply for federal black lung benefits. *Id.* So he sent a letter to his former employer explaining that he retired due to shortness of breath and requesting the information necessary to complete the claims form for black lung benefits. *Id.* Eventually, a doctor diagnosed him with black lung disease in 1984.

*Id.* at 500.  Applying a similar discovery rule under the Federal Employers' Liability Act, the Fourth Circuit held that the plaintiff's claims accrued in 1980 when he admitted in his letter that he "suspected that he suffered from black lung and that his condition was caused by his work on the railroad."  *Id.* at 501.

Boggs had even more facts in his arsenal in 1991 than the railroad worker did in *Townley*.  Boggs not only suspected that he suffered from black lung.  He actually filed a federal black lung benefits claim due to "shortness of breath," was referred to Dr. Sundarum for a black lung examination, and followed up with Dr. Breeding to ask about his diagnosis. These facts triggered Boggs's duty to investigate the possible causes of his black lung disease, including the allegedly defective respirators.  *Accord Debiec v. Cabot Corp.*, 352 F.3d 117, 139 (3d Cir. 2003) (holding, under Pennsylvania's similar discovery rule, that a plaintiff was put on notice of his claim for chronic beryllium disease when he received an information packet identifying the disease's symptoms, which were consistent with the plaintiff's symptom).  Indeed, Boggs had no more information in 1991 about the cause of his black lung disease than he did in 2010.  The discovery rule simply does not toll the statute of limitations when a plaintiff does not need to discover any more information to learn of his injury and its possible cause.

Boggs tries to chip away at this conclusion.  Relying on his own deposition testimony, Boggs argues that a factual dispute exists about whether he was actually diagnosed with black lung disease in 1991.  *See* R. 70-1 at 14 (Dep. at 144) (testifying he did not "think" that he was diagnosed with black lung before 2010).  His federal black lung claim, black lung examination with a pulmonologist, medical records, and discussions with several doctors show, however, that no such factual dispute exists.  To shield his claims from summary

judgment, Boggs must present competent evidence showing a factual dispute. At most, though, Boggs's deposition testimony indicates that he could not remember when he learned of his diagnosis. *See* R. 86-1 at 3 (Dep. at 125).[2] Such a memory lapse cannot defeat summary judgment. *See Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (holding that the plaintiff's affidavit, which was supported only by "pure supposition" in a witness's deposition testimony, was insufficient to create a genuine issue of material fact); *Townley*, 887 F.2d at 501 ("[A plaintiff] may not use the contradictions in his own testimony to create an issue of fact for the jury." (citing *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984))).

Boggs also argues that the discovery rule delayed the one-year clock while he waited for someone to tell him about the connection between black lung disease and his respirator. And that did not happen, he reasons, until his attorney, Zane Cagle, told him about the alleged defects in the 3M and American Optical respirators. *See* R. 70 at 11–12.

This conversation with his attorney may be where Boggs hangs his hat, but his hat rack has a faulty hook. Sure, Boggs may not have *actually* known about this causal link until Mr. Cagle told him in 2010. But actual knowledge is only one-half of the discovery rule. That rule delays the accrual of Boggs's black lung claim until he had "actual *or constructive* knowledge" of his injury and its cause. *Michals*, 289 F.3d at 406 (quoting *Wiseman*, 37 S.W.3d at 712) (emphasis added). Boggs had sufficient facts in September 1991 to put him on notice that the respirators may have caused his black lung disease. *See supra* at 5–6.

---

[2] When asked if anyone told him before 2010 that he had black lung disease, Boggs initially replied "no." *See* R. 70-1 at 144. Elsewhere, however, Boggs testified that he simply could not remember whether he was diagnosed with black lung disease in 1991. R. 86-1 at 125 ("Q: You don't have any recollection of anyone telling you had black lung disease? A: No, huh-uh, I can't remember.").

Both the Sixth Circuit and the Kentucky Supreme Court have foreclosed Boggs's argument that the discovery rule delays a statute of limitations from starting until an attorney tells him about the connection between his disease and the respirators. *See Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 641 (6th Cir. 1986) (citing *Conway v. Huff*, 644 S.W.2d 333 (Ky. 1983)). If the rule were otherwise, a plaintiff could "plead a stale case merely because he did not see 'the right lawyer' at the appropriate time" or "endlessly shop for a lawyer until he found one willing to take his case." *Id.* After all, what if Boggs had seen a lawyer less knowledgeable about respirators than Mr. Cagle? Would his black lung claims continue to be viable even today? Surely not. Boggs knew that the respirators were supposed to prevent black lung disease, yet he got that disease anyway. All the more reason that a diligent plaintiff in Boggs's position would not need an attorney to tell him about his disease's link to the allegedly defective respirators.

Undeterred, Boggs points to *3M Co. v. Engle*, 328 S.W.3d 184 (Ky. 2010), as implicitly holding that the statute of limitations does not start until his attorney tells him about the respirators' defects. Yet Boggs misreads *Engle*. Much like here, *Engle* involved coal miners who sued 3M and American Optical for black lung disease caused by an allegedly defective respirator. *Id.* at 186. 3M and American Optical moved for summary judgment, arguing that the statute of limitations barred the coal miners' claims. *Id.* In response, the coal miners claimed that they did not learn about the possible cause of their black lung disease until their attorneys informed them. *Id.* The trial judge denied the motions for summary judgment. *Id.* Afterward, 3M and American Optical tried to depose the coal miners' attorney to learn when he first told the coal miners about the cause of their injuries. *Id.* at 187. Invoking their attorney-client privilege, the coal miners moved for a

9

protective order to prevent the deposition, but the trial court denied that motion and ordered the deposition. *Id.* Dissatisfied, the coal miners climbed the appellate ladder, petitioning for a writ of prohibition to prevent the deposition from taking place.

Denying the writ, the Kentucky Supreme Court held that 3M and American Optical were entitled to depose the coal miners' attorney. *Id.* at 189. The coal miners had made the conversation with their attorney relevant to the statute-of-limitations dispute, and therefore it would be "manifestly unfair" to protect that same information from discovery by 3M and American Optical. *Id.* What the Kentucky Supreme Court did *not* decide, however, was whether the trial court correctly ruled that the statute-of-limitations dispute turned on when the coal miners' attorney informed them of the connection between the respirators and black lung disease. The merits of the trial court's denial of summary judgment were simply not before the Kentucky Supreme Court, nor could they have been, *see Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010) (explaining the "general rule" that "a denial of a motion for summary judgment" is "not appealable because of its interlocutory nature" (quoting *Transp. Cabinet, Bureau of Highways, Commonwealth of Ky. v. Leneave*, 751 S.W.2d 36, 37 (Ky. Ct. App. 1988))). *Engle* was about nothing more than a discovery dispute and is therefore irrelevant.

Boggs's interpretation of *Engle* would radically change the landscape of Kentucky's discovery rule. The rule "applies only where the plaintiff has been reasonably diligent in protecting his legal rights." *Hazel v. Gen. Motors Corp.*, 83 F.3d 422, at *3 (6th Cir. 1996) (unpublished table decision) (quoting *Burke v. Blair*, 349 S.W.2d 836, 838 (Ky. 1961)). Between 1991 and 2010, Boggs admits that he did not take any steps to investigate the possibility that the respirators caused his black lung disease. *See* R. 65-6 at 2 (Dep. at 127).

Further, nothing prevented Boggs from contacting an attorney in 1991. Yet tolling the statute of limitations from 1991 to 2010, as Boggs wishes, would permit a plaintiff to ignore all evidence of the link between his latent injury and its cause until someone else explicitly connects the dots for them. Such willful blindness is not consistent with the discovery rule's requirement of reasonable diligence. *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 67 (Ky. 2010) ("Despite our sympathy for those injured by products through no fault of their own, such injured parties have the duty to act diligently to investigate apparent possible causes of their injuries in order to pursue claims within the statute of limitations."). Therefore, under the discovery rule, Boggs's claims accrued no later than September 20, 1991.

### B.  Equitable Estoppel

Jim Boggs also contends that 3M is equitably estopped from relying on a statute-of-limitations defense. That argument does not fly. A defendant is equitably estopped from relying on a statute-of-limitations defense when he has taken "active steps to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations." *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004); *see also Frontier Ins. Co. in Rehab. v. RLM Constr. Co.*, No. 10-5780, 2012 WL 833655, at *3 (6th Cir. Mar. 13, 2012) (holding that the doctrine applies when the defendant has "acted in a manner 'calculated to mislead or deceive and induce inaction by the injured party'" (quoting *Adams v. Ison*, 249 S.W.2d 791, 793 (Ky. 1952))). For equitable estoppel to toll the statute of limitations, Boggs must show that (1) he "lacked the means of acquiring knowledge of the truth" that the respirators he used were defective, (2) 3M acted in a way that concealed the defects of its respirator, and (3) 3M's actions prevented him from investigating the defective nature of the respirator. *Fluke*, 306 S.W.3d at 62–66.

11

Boggs claims that 3M actively concealed its respirator's defects (the second requirement).  Even if a genuine dispute exists about whether 3M affirmatively concealed defects in the final version of the respirator, Boggs has not satisfied the other two elements of equitable estoppel.  He does not explain how he "lacked the means" of finding out about the respirator's alleged defects from 1991 to 2010.  After all, he has not produced any evidence that he was unable to investigate the respirator's defects, and he could have hired a knowledgeable lawyer in 1991 just as readily as he did in 2010.

Nor does Boggs explain how 3M's alleged concealment caused him not to investigate the respirator as a source of his black lung disease from 1991 to 2010.  Even if 3M had a continuing duty to disclose the respirator's defects to the government and did not do so, its silence does not automatically toll the statute of limitations.  *Fluke Corp.*, 306 S.W.3d at 63 (reversing the lower court, which held that a manufacturer's silence in the face of a statutory obligation to report product safety information allows a plaintiff to assume the product is safe, because that approach "negates the plaintiff's duty to exercise reasonable diligence to investigate apparent possible causes of his injuries").  3M's silence must have been relied upon by Boggs and prevented him from "learning enough to assess whether" he should sue. *Id.* at 65 ("Even if [the manufacturer] had somehow concealed evidence of a defect . . . , the possibility of [the defect] (and cause of action against the manufacturer) was evident from the facts of the [injury].").  This is not a case in which 3M, for example, initially "promis[ed] not to plead the statute of limitations" as a defense, causing Boggs to stop his investigation into the respirator's defects. *E.E.O.C. v. Ky. State Police Dep't*, 80 F.3d 1086, 1095 (6th Cir. 1996) (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir. 1990)). Consequently, Boggs's unexcused "failure to exercise reasonable diligence to discover [his]

12

cause of action and the identity of the tortfeasor[s] within the time prescribed by the statute of limitations" dooms his black lung claims. *Fluke Corp.*, 306 S.W.3d at 56.  Boggs knew that the respirator was supposed to protect him from black lung disease, yet he ended up with that disease.  It would have been only logical for Boggs to investigate the respirators, and there is no evidence that 3M's actions caused him to overlook them as a source of his injuries.

*     *     *

Neither the discovery rule nor equitable estoppel delays the accrual of Boggs's black lung claims past 1991.  The one-year statute of limitations on his black-lung claims began to run on September 20, 1991.  Because he waited until April 15, 2011, to file his lawsuit, his black lung claims are too late.  Summary judgment is therefore appropriate.

## II.  The Boggses' Motion to File a Third Amended Complaint

After 3M and American Optical moved for summary judgment, the Boggses moved to file a third amended complaint.  R. 81.  This proposed amendment would add Jim Boggs's lung cancer as a separate injury caused by his use of the allegedly defective respirators.  *Id.* As 3M and American Optical rightfully point out, though, this amendment would be futile because any claim for lung cancer is outside the one-year statute of limitations.   The Boggses' motion is therefore denied.

### A.  Timeliness of 3M's and American Optical's Responses to the Motion

Before ruling on the merits of the motion, the Court must first address a minor procedural hurdle.   The Boggses argue that 3M and American Optical were late in responding to his motion to file a third amended complaint, thereby waiving their objections. R. 96 at 1–2.  3M's and American Optical's responses, however, were timely.  The Boggses

moved for leave to file a third amended complaint on April 18, 2012.  R. 81.  Under Local Civil Rule 7.1(c), the defendants' responses were due "within twenty-one (21) days of service of the motion."  3M filed its response twenty-three days later on May 11, 2012, R. 93, and American Optical filed its response twenty-six days later on May 14, 2012, R. 95. At first blush, their responses appear to be late.

That logic, however, assumes that the Plaintiffs served 3M and American Optical with the motion on the same day that they filed it.  Owing to a quirk of the Federal Rules of Civil Procedure, they did not.  Federal Rule of Civil Procedure 6(d) grants an additional three days for service accomplished by sending a document via "electronic means," including the "court's transmission facilities" if the local rules allow it, *see* Fed. R. Civ. P 5(b)(2)(E), (b)(3).

And Local Civil Rule 5.5 does allow this three-day extension for service through the Court's Electronic Case Filing ("ECF") system.  In fact, Joint General Order Number 11-02 requires it.  To be sure, ECF "greatly speeds delivery" of documents because parties receive e-mail notices of all new filings.   Frequently Asked Questions, PACER, http://www.pacer.gov/psc/efaq.html # CMECF (follow "What are the benefits and features of using CM/ECF?" hyperlink), (last visited May 21, 2012).  Nevertheless, parties are entitled to three extra days to act on documents that they receive instantly.  *See* Fed. R. Civ. P. 5(b)(2)(E); E.D. Ky. Joint General Order No. 11-02 ¶ 12.3 ("[S]ervice by electronic means is treated the same as service by mail for purposes of adding three (3) days to the prescribed period to respond.").  Twenty-one days from the Plaintiffs' motion was May 9, 2012, and an additional three days extended the deadline for responses until May 12.  Because that day was a Saturday, the deadline was automatically extended until Monday, May 14, 2012.  *See*

Fed. R. Civ. P. 6(a)(1)(C) ("[I]f the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").  Both 3M's and American Optical's responses were therefore timely.

### B.  Whether Leave to File Third Amended Complaint is Proper

The Boggses are not entitled to amend their complaint.  Federal Rule of Civil Procedure 15(a) entitles a party to "amend its pleading once as a matter of course" before being served with a responsive pleading and instructs courts to "freely give leave [to amend] when justice so requires" in all other cases.  But "that window of opportunity does not remain open forever."  *Shane v. Bunzl Distr. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008).  Once the scheduling order's deadline to amend pleadings expires, the moving party must show good cause for its tardiness and lack of prejudice to the defendants before a court will even "consider whether amendment is proper under Rule 15(a)."  *Leary v. Daeschner*, 349 F.3d 888, 906–07 (6th Cir. 2003) (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)).

Here, the deadline for amending pleadings was November 15, 2011, R. 23 at 4, but the Boggses waited until April 18, 2012, to move for leave to file their third amended complaint, R. 81.  Accordingly, the Boggses would normally have to show that "despite their diligence they could not meet the original deadline" and that their late amendment will not prejudice 3M and American Optical.  *Leary*, 349 F.3d at 907.  But the Court does not need to decide the close question of whether their tardy amendment was motivated by good cause and does not prejudice the Defendants.  Even if they did meet this standard, the Court would deny leave because their proposed amendment would not survive a motion to dismiss.  *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Neighborhood Dev. Corp.*

*v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).  Here, Jim Boggs's amended allegation of lung cancer is futile because it would be barred by the one-year statute of limitations.

  ***1. When did the one-year clock start?***  A statute of limitations begins running when the claims accrue.  *See* Ky. Rev. Stat. § 413.140(1).  The parties agree that the one-year clock on Boggs's lung cancer claims began running when he was diagnosed with lung cancer in June 2010.  R. 104 at 1; R. 105 at 1–2; R. 106 at 1.

  ***2. Did the Boggses commence an action for lung cancer by June 2011?***  To bring a timely claim, the plaintiff must "commence" an action for that claim within the statute of limitations.  *See* Ky. Rev. Stat. § 413.140(1).  The Boggses offers two reasons why the lung cancer allegations are timely.  The Boggses contend that their original complaint, which they filed in April 2011, encompassed claims for lung cancer; therefore, the proposed amendment is a timely clarification of the original complaint.  And, they continue, even if the original complaint did not encompass lung cancer, then the proposed amendment is still timely because it will relate back to the date of the original complaint.  Both arguments are incorrect.

  The original complaint does not sufficiently allege claims for lung cancer.  First, a primer on the rules of reading complaints: "Although a federal court sitting in diversity applies the substantive law of the forum state, the federal court ordinarily applies its own rules of procedure to adjudicate the dispute."  *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 313 n.11 (6th Cir. 2011).  Federal procedural law requires the complaint to "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Republic Bank & Trust Co. v. Bear Sterns & Co, Inc.*, 683 F.3d 239, 247 (6th Cir. 2012)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Kentucky substantive law, in turn, defines what a "claim for relief" is.  The parties do not dispute that Kentucky law treats distinct latent diseases to the same organ, such as black lung disease and lung cancer, as separate claims for relief with independent statute-of-limitation clocks, even when they arise out of the same toxic exposure.  R. 70 at 15–16; R. 104 at 6; R. 105 at 5–6; *see Carroll v. Owens-Corning Fiberglas Corp.*, 37 S.W.3d 699, 703 (Ky. 2000); *Combs v. Albert Kahn & Assocs., Inc.*, 183 S.W.3d 190, 195–96 (Ky. Ct. App. 2006).

Taken together, then, federal procedural law and Kentucky substantive law required the Boggses' original complaint to plead sufficient facts to support a claim based on Jim Boggs's lung cancer.  Yet the original complaint only alleges that he developed "silicosis/pneumoconiosis," or black lung disease; it contains no factual allegations related to lung cancer.  *See* R. 1 ¶ 20(c)–(f), (h)–(i).  The Boggses make much of the fact that, in the complaint, they sought damages for "silica related occupational lung disease."  This broad phrase, they conclude, encompasses both black lung disease and lung cancer.  *See* R. 106 (citing Compl., R. 1 ¶¶ 20(g), 39, 43, 50, 55, 61).

But it is not plausible that the label "silica related occupational lung disease" includes lung cancer because there is no "factual content" from which the Court or the defendants can "draw the reasonable inference" that 3M and American Optical are liable for lung cancer. *Ashcroft*, 556 U.S. at 678.  To draw this inference, the Court would have to add a factual allegation to the complaint—that Boggs actually developed lung cancer, the same allegation proposed by the third amended complaint.  This the Court cannot do.

The Boggses point to *Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 250 (6th Cir. 2000), for the proposition that their complaint need not specify the "particular

17

pathologies of a given carcinogen." R. 106 at 2–3. *Miller* is inapposite. There, various seamen were exposed to asbestos and other hazardous substances, succumbing to colon cancer and asbestosis. *Miller*, 231 F.3d at 244. The administrator of their estates filed a wrongful death claim under federal maritime law for asbestosis resulting from exposure to asbestos and "other hazardous substances." *Id*. at 249–50. After the statute of limitations expired, the administrator amended her petition to include claims for benzene-induced leukemia. *Id.* at 246. Arguing that the amendment should not relate back to the original complaint, the defendant asserted that the amended claims for benzene-induced leukemia was "materially different" from the original asbestosis claim. *Id.* at 250. Rejecting that argument, the Sixth Circuit concluded that relation back was appropriate because benzene exposure claims "fit comfortably" within the original complaint's allegations of "exposure to other 'hazardous substances.'" *Id.*.

Similarly, the Boggses argues that lung cancer claims "fit comfortably" within the original complaint's use of the term "silica related occupational lung disease." R. 106 at 4 (quoting *Miller*, 231 F.3d at 249). But this argument conflates federal procedural law with state substantive law. In *Miller*, which involved claims under federal maritime law, federal law governed both the procedural specificity with which claims must be plead and the substantive definition of claims. There, the Sixth Circuit rejected the defendant's argument that federal substantive law treats benzene exposure and asbestos exposure as different claims. *See Miller*, 231 F.3d at 250 ("The [defendant's] arguments that injuries arising from exposure to asbestos are materially different from injuries arising from exposure to benzene . . . is unconvincing."). Based on that conclusion about federal substantive law, the Sixth Circuit concluded that federal procedural law permitted relation back because the amended

18

claims for benzene-induced leukemia involved the same cause of action as that for asbestos exposure.  *Id.* at 249 (citing *Tiller v. Atlantic Coast Line RR Co.*, 323 U.S. 574, 581 (1945)).

Unlike the federal substantive law in *Miller*, however, Kentucky substantive law treats black lung disease and lung cancer as distinct injuries and thus separate causes of action, each with its own statute of limitations, even when both result from the same exposure.  *See supra* at 17.  As a result, federal procedural law required the Boggses' complaint to allege facts specific to a lung cancer claim.  *Accord Koon v. Lakeshore Contractors*, 128 F.R.D. 650, 653 (W.D. Mich. 1988), *aff'd*, 889 F.2d 1087 (6th Cir. 1989) (per curiam) (holding that an amendment alleging negligence and unsafe working conditions under federal law did not relate back because it involved different injuries that occurred in different ways).

Consider the anomalies that the Boggses' argument would create between federal and state courts in the same forum in diversity cases.  If the Boggses had brought this case in Kentucky court, their lung cancer claims would be time-barred because their complaint did not include any facts specific to a claim of lung cancer.  But under their application of *Miller*, those same lung cancer claims would not be untimely in federal court.  There is "simply no reason why" a state-law claim that "concededly would be barred in the state courts by the state statute of limitations should proceed" in federal court "solely because of the fortuity that there is diversity of citizenship between the litigants."  *Walker v. Armco Steel Corp.*, 446 U.S. 740, 753 (1980).  There is thus no way to interpret the Boggses' original complaint as including a claim for lung cancer.

Alternatively, the Boggses argue that their proposed amendment relates back to the date of the original complaint and is therefore timely even if the original complaint does not

encompass lung cancer.  R. 106 at 2.  In some situations, the "relation back" doctrine treats some subsequent amendments to pleadings as if they were filed on the date of the earlier pleading.  *See* Fed. R. Civ. P. 15(c).  One such situation is when the amended claim arises "out of the same conduct, transaction, or occurrence as that set forth in the original complaint."  *Miller*, 231 F.3d at 248 (citing Fed. R. Civ. P. 15(c)(2)).  The Boggses argue that the proposed amendment adding lung cancer relates back to the original complaint's black lung claims because both arose out the same occurrence—exposure to coal dust due to defective respirators.  R. 106 at 3–4.

The Boggses' argument skips an important step.  As they agree, *see* Mots Hr'g Tr., R. 100 at 38, a later amendment cannot relate back to an untimely complaint under Federal Rule of Civil Procedure 15(c)(2), *see Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (citing *Henderson v. Bolanda*, 253 F.3d 928, 931–32 (7th Cir. 2001)).  Otherwise, an untimely original complaint could "act as a lifeline" for later untimely claims, *id.*, permitting a "complaint that was dead on arrival" to "breathe life into another [untimely] complaint." *Papenthien v. Papenthien*, 16 F. Supp. 2d 1235, 1241 (S.D. Cal. 1998).  A contrary rule would allow a plaintiff to effectively extend the statute of limitations by first filing a placeholder complaint of time-barred claims.  Because the Boggses' original complaint only contained black lung claims barred by the one-year statute of limitations, the original complaint is untimely.  Consequently, Federal Rule of Civil Procedure 15(c)(2) does not allow the proposed amendment to relate back to the original complaint.

That does not end the relation-back question, though, because Rule 15(c) also permits relation back if it is allowed by the law providing the "applicable statute of limitations"— here, Kentucky.  Fed. R. Civ. P. 15(c)(1).  In other words, if state law "affords a more

forgiving principle of relation back than [Federal Rule of Civil Procedure 15(c)], it should be available to save the claim." *Id.*, Commentary to the 1991 Amendment. The Plaintiffs offer no reason, however, why the functionally identical Kentucky Rule of Civil Procedure 15.03 would permit an amendment to relate back to an untimely complaint. *Cf. Phelps v. Wehr Constr., Inc.*, 168 S.W.3d 395, 398 n.6 (Ky. Ct. App. 2004) (describing Federal Rule of Civil Procedure 15(c) as "substantially the same as" Kentucky Rule of Civil Procedure 15.03). The Court can think of none.

Without relation back, the lung cancer allegations in the proposed amendment must be treated as if they were filed when the Boggses moved for leave to file the amendment on April 18, 2012, *see* R. 81. The one-year statute of limitations on his lung cancer claims began in June 2010, meaning that he had to bring these claims no later than June 2011. He did not. His lung cancer claims are therefore untimely, amendment would be futile, and the motion for leave must be denied.

## III.    Linda Boggs's Loss-of-Consortium Claims

Jim Boggs's wife, Linda, has also sued 3M and American Optical for loss of consortium due to her husband's black lung disease. Under Kentucky law, loss of consortium is a separate cause of action, but it is "derivative" of the underlying tort claim. *Norton v. Canadian Am. Tank Lines*, No. 06-411-C, 2009 WL 931137 (W.D. Ky. Apr. 3, 2009) (quoting *Godbey v. Univ. Hosp. of Albert B. Chandler Med. Ctr.*, 975 S.W.2d 104, 106 (Ky. Ct. App. 1998)); *Floyd v. Gray*, 657 S.W.2d 936, 941 (Ky. 1983); *accord Monak v. Ford Motor Co.*, 95 F. App'x 758, 768 (6th Cir. 2004) (holding, under Ohio law, that loss of consortium is a "derivative action that does not exist absent a primary claim"). Because the Court has granted summary judgment on Jim Boggs's claims, there are no primary claims

left to support his wife's loss-of-consortium claims.  His wife's claims thus fail.  *See, e.g.*, *Eilerman v. Cargill, Inc.*, 195 F. App'x 314, 319–20 (6th Cir. 2006) (applying this reasoning to claims under Ohio law).

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1)     3M's motion for summary judgment, R. 65, and American Optical's motion for summary judgment, R. 68, are **GRANTED**.  Summary judgment is granted in favor of the defendants on all of the claims asserted in the complaint.

(2)     The Boggses' motion for leave to file a third amended complaint, R. 81, is **DENIED**.

(3)     All pending deadlines and hearing are **CANCELLED**.

(4)     The Clerk shall **STRIKE** this case from the Court's active docket.

(5)     The Court will issue a separate Judgment contemporaneously with this Memorandum Opinion and Order.

This the 24th day of August, 2012.



Signed By:

*Amul R. Thapar*

United States District Judge